UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | 09 CV 00351 (LDW-ARL) |
| Plaintiff, | |
| v. | Memorandum Of Points And Authorities In Support Of Plaintiff's Application For Entry Of Judgment By Default Against Defendant Nicholas Cosmo With Ancillary Equitable Relief |
| NICHOLAS COSMO, AGAPE WORLD, INC. and AGAPE MERCHANT ADVANCE LLC, | |
| Defendants. | |

U.S. COMMODITY FUTURES TRADING COMMISSION

Stephen J. Obie
Regional Counsel

Elizabeth C. Brennan (ebrennan@cftc.gov)
Steven I. Ringer (sringer@cftc.gov)
Division of Enforcement
140 Broadway, 19th Floor
New York, New York 10005
(646) 746-9747
(646) 746-9940 (facsimile)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.     PRELIMINARY STATEMENT ................................................................................1

II.    PROCEDURAL BACKGROUND .............................................................................1

III.   THE COURT SHOULD ENTER JUDGMENT BY DEFAULT
       AGAINST COSMO ...................................................................................................3

IV.    LEGAL DISCUSSION ...............................................................................................4

       A.   The Court has Jurisdiction Over this Action .....................................................4

       B.   Violations of 4b(a) of the Act - Cosmo Cheated and Defrauded Investors and
            Willfully Deceived Investors ..............................................................................5

V.     THE COURT SHOULD GRANT THE COMMISSION
       APPROPRIATE RELIEF ...........................................................................................9

       A.   Permanent Injunction Against Cosmo................................................................9

       B.   Civil Monetary Penalty.....................................................................................12

VI.    CONCLUSION .........................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104 (S.D.N.Y. 1998), *aff'd in relevant part sub nom., CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000)..................................................................5, 6

*CFTC v. British American Commodity Options Corp.*, 560 F.2d 135 (2d Cir. 1977) *cert. denied*, 438 U.S. 905 (1978) ...........................................................................................................9

*CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 566 (9th Cir. 1981) .....................................11

*CFTC v. Emerald Worldwide Holdings, Inc.,* No. CV03-8339, 2005 WL 1130588 (C.D.CA, April 19, 2005)........................................................................................................... 12, 13

*CFTC v. Hays, 2011 U.S. Dist. LEXIS 9243* (D. Minn. Jan. 27, 2011) .....................................153

*CFTC v. Hunt*, 591 F.2d 1211 (7th Cir. 1979), *cert. denied*, 442 U.S. 921 ...................................9

*CFTC v. Morgan, Harris & Scott, Ltd.,* 484 F.Supp. 669 (S.D.N.Y. 1979) ................................10

*CFTC v. Muller,* 570 F.2d 1296 (5th Cir. 1978)........................................................................6, 9

*CFTC v. Noble Wealth Data Information Svcs., Inc.* 90 F.Supp.2d 676 (D.Md. 2000) *aff'd in part, vacated in part by CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002)...............................12

*CFTC v. Orion*, 2006 WL 3422672 (D.Ore. Nov. 27, 2006) ........................................................13

*CFTC v. Skorupskas,* 605 F.Supp. 923 (E.D. Mich. 1985) ............................................................7

*CFTC v. U.S. Metals Depository*, 468 F.Supp. 1149 (S.D.N.Y. 1979) ..........................................6

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 395 F.3d 25 (2d Cir. 2005).......................8

*Do v. Lind-Waldock & Co.*, [1994-1996 Transfer Binder] Comm. Fut., L. Rep. (CCH) ¶ 26,516 (CFTC Sept. 27, 1995) .............................................................................................................6

*Enron Oil Corp. v. Diakurara*, 10 F.3d 90 (2d Cir. 1993).............................................................3

*FTC v. Verity*, 443 F.3d 48 (2d Cir. 2006) ...................................................................................13

*Fustok v. Conticommodity Services, Inc.*, 873 F.2d. 38 (2d Cir. 1989) ........................................3

*Hammond v. Smith Barney, Harris Upham & Co.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,617 (CFTC March 1, 1990) ........................................................................6

*Hecht v. Bowles*, 321 U.S. 331 (1944) ...........................................................................................9

*In re Agape Litigation*, 681 F.Supp.2d 352 (E.D.N.Y. 2010) ...................................................7, 8

*In re Commodities Int'l Corp.,* [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,943 (CFTC Jan. 14, 1997)................................................................................................................6

*In re GNP Commodities, Inc.* [1990–92 Transfer Binder] Com. Fut. L. Rep. (CCH) ¶ 25,360 (CFTC 1992).........................................................................................................................12

*In re Grossfeld,* [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) 26,921, 1996 WL 709219 (CFTC Dec. 10, 1996) *aff'd* 137 F.3d 1300 (11th Cir. 1998)....................................13

*International Controls Corp. v. Vesco,* 535 F.2d 742 (2d Cir. 1976).............................................4

*Kearney v. Prudential-Bache Securities, Inc.*, 701 F.Supp. 416 (S.D.N.Y. 1988)........................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503 (2006) .............................8

*Patray v. Northwest Publishing, Inc.*, 931 F. Supp. 865 (S.D. Georgia 1996) .............................4

*R&W Technical Svcs., Ltd. v CFTC,* 2006 WL 1439258 (5th Cir. 2006)..................................13

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2d Cir. 1986) ......................................................6

*SEC v. Aaron,* 605 F.2d 612 (2d Cir. 1979) ..................................................................................9

*SEC v. Advance Growth Capital Corp.*, 470 F.2d 40 (7th Cir. 1972) ..........................................11

*SEC v. Lorin*, 76 F.3d 458 (2d Cir. 1996) ...................................................................................13

*SEC v. Management Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975)..............................................10

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d, 1082 (2d Cir. 1972) ...........................................9

*SEC v. Tome*, 638 F.Supp. 596 (S.D.N.Y. 1986)........................................................................10

*SEC v. Youmans*, 729 F.2d 413 (6th Cir.), *cert. denied,* 469 U.S. 1034 (1984) ............................. 9
*Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610 (2d Cir. 1999) ............................................ 3
*Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000) ............................................................................ 13
*Tatum v. Legg Mason Wood Walker, Inc.* 83 F.3d 121 (5th Cir. 1996) .......................................... 8
*Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51 (2d Cir. 1971) *rev'd on other grounds*, 409 U.S. 363 (1973) ................................................................................................................ 3
*U.S. v. Cosmo*, (2d Cir. 2012), Case No. 11-4506, dated Sept. 20, 2012, Doc. No. 70-1, *affirming U.S. v. Nicholas Cosmo*, Docket No. CR-09-255 (DRH) .................................................. 11, 14
*U.S. v. Nicholas Cosmo*, Docket No. CR-09-255 (DRH) ................................................. 2, 11, 14
*U.S. v. O'Hagan*, 117 S.Ct. 2199 (1997) ....................................................................................... 8

**Statutes**
18 U.S.C. § 1341 ............................................................................................................................ 2
18 U.S.C. § 1343 ............................................................................................................................ 2
28 U.S.C. § 1961 .......................................................................................................................... 14
7 U.S.C. § 13a-1 ......................................................................................................................... 4, 9
7 U.S.C. § 13a-1(c) ...................................................................................................................... 11
7 U.S.C. § 13a-1(d)(1) ................................................................................................................. 12
7 U.S.C. § 6b(a)(2) ........................................................................................................................ 9
7 U.S.C. §§ 1 *et seq.* ...................................................................................................................... 1
7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006) ..................................................................................... 1, 4
7 U.S.C. §§ 6b(a)(1)(A) ................................................................................................................ 4

**Rules**
Fed R. Civ. P. 55(b)(2) ............................................................................................................ 3, 14
Fed. R. Civ. P. 12(a)(1) ................................................................................................................. 2
Fed. R. Civ. P. 4(e) ........................................................................................................................ 2
Fed. R. Civ. P. 54(b) ...................................................................................................................... 4
Fed. R. Civ. P. 55(a) .................................................................................................................. 1, 3
Fed. R. Civ. P. 55(b) ...................................................................................................................... 3
Local Rule 55.1 .............................................................................................................................. 1
Local Rule 55.2(b) ......................................................................................................................... 3

**Regulations**
17 C.F.R. § 143.8(a)(1)(ii) ........................................................................................................... 12

I.       PRELIMINARY STATEMENT

Based upon a proper showing by Plaintiff, U.S. Commodity Futures Trading Commission ("Commission"), that (1) Defendant Nicholas Cosmo ("Cosmo") was properly served, (2) Cosmo failed to file an answer or otherwise move with respect to the complaint, and (3) Cosmo is not an infant, in the military, or an incompetent person,[1] the Clerk of Court entered defaults pursuant to Local Rule 55.1 and Rule 55(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P") against Cosmo.  The Commission now seeks entry of default judgment and statutory and ancillary equitable relief against Cosmo.  In support of its Application, the Commission submits this memorandum, a proposed Order, and the Declaration of Philip Rix in Support of Plaintiff's Application for Judgment by Default along with its attached exhibits.

II.      PROCEDURAL BACKGROUND

On January 27, 2009, the Commission filed a Complaint charging Defendants Cosmo, Agape World, Inc. ("AWI") and Agape Merchant Advance LLC ("AMA"), (collectively referred to herein as "Defendants") with cheating, defrauding and deceiving AWI and AMA investors in violation of Section 4b(a)(2)(i) and (iii) of the Commodity Exchange Act (the "Act") (2006), 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006) and Section 4b(a)(1)(A) and (C) of the Act, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101 - 13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq*.  In addition, Cosmo was charged as a controlling person of AWI and AMA pursuant to Section 13(b) of the Act.[2]  On that same date, the Court also issued an *Ex Parte* Statutory Restraining Order.

---

[1]      *See* the Declaration of Philip D. Rix ("Dec."), ¶ 6, Exhibit ("Ex.") D:  Docket Sheet, ECF Entry No. 32.

[2]      *See* Rix Dec., ¶ 4, Exhibit ("Ex.") A:  Complaint ¶¶ 21-27.

1

On January 29, 2009, Cosmo was properly served pursuant to Rule 4(e) of the Fed. R. Civ. P.[3] Cosmo was personally served with the summons and complaint by representatives of the U.S. Marshals Service.[4] On March 24, 2009, the Court approved stipulations of Consent Preliminary Injunctions as to all Defendants which included a stay of the Commission's case and the filing of any answers to the complaint pending the resolution of Cosmo's parallel criminal proceeding, *U.S. v. Nicholas Cosmo*, Docket No. CR-09-255 (DRH). On October 29, 2010, Cosmo pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of mail fraud in violation of 18 U.S.C. § 1341, and, on October 14, 2011, Cosmo was sentenced to 300 months incarceration and restitution in the amount of $179,195,232.63.

On March 19, 2012, the Court reopened the Commission's litigation, lifted the stay and provided Cosmo until April 9, 2012 to file an answer.[5]

Since March 19, 2012, Cosmo has failed to answer or otherwise defend the Complaint within the time permitted by Rule 12(a)(1) of the Fed. R. Civ. P.[6] Accordingly, on July 26, 2012, the Clerk of this Court entered Cosmo's default.[7]

---

[3] Rule 4(e)(1) allows for service, in pertinent part "…(1) pursuant to the law of the state in which the district court is located, or in which service is effected…; or (2) by delivering a copy of the summons and of the complaint to the individual personally. . . ."

[4] In addition to the summons and complaint, Cosmo was also served with the following documents: the Commission's Application for an *Ex Parte* Statutory Restraining Order, Memorandum of Law in Support, Declaration in Support, the *Ex Parte* Statutory Restraining Order, and copies of the AWI and AMA summonses. *See* Rix Dec. ¶ 3, Exs. B and C: U.S. Department of Justice United States Marshals Service "Process Receipt and Return" documents.

[5] *See* Rix Dec. ¶ 6, Ex. D: PACER printout of the docket of this matter, ECF Document No. 28 filed March 19, 2012.

[6] *See* Rix Dec. ¶ 6, Ex. D: PACER printout of the docket of this matter.

[7] *See* Rix Dec. ¶ 7, Ex. E: Clerk's Certificate of Default of Defendant Cosmo.

### III. THE COURT SHOULD ENTER JUDGMENT BY DEFAULT AGAINST COSMO

When a defendant has failed to plead or otherwise defend, and that fact is made to appear by affidavit or otherwise, the Clerk of the Court may enter a default pursuant to Rule 55(a) of the Fed.R.Civ.P. After a defendant's default has been entered, the plaintiff may apply for a judgment based on such default. The entry of a judgment by default is within the sound judicial discretion of the Court pursuant to Rule 55(b) Fed. R. Civ. P.[8] In all cases other than where a sum certain is sought, the Commission must move for an entry of a judgment by default.[9] Because the Complaint in this case seeks injunctive and other equitable relief, the Commission seeks entry of a judgment by default by the Court.[10]

If the court determines that the parties are in default, the well-pleaded factual allegations of the complaint, except those relating to the amount of damages, will be taken as true and establish a defendant's liability.[11] Although the well-pleaded factual allegations of the complaint

---

[8] Dispositions of motions for default judgments "are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999), *quoting Enron Oil Corp. v. Diakurara*, 10 F.3d 90, 95 (2d Cir. 1993). However, Rule 55 does not require that a hearing be held in every case. *Fustok v. Conticommodity Services, Inc.*, 873 F.2d. 38, 40 (2d Cir. 1989) ("By its terms, Fed R. Civ. P. 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court").

[9] Rule 55(b)(2); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d at 95.

[10] Pursuant to Local Rule 55.2(b), attached as Ex. A to the Rix Dec. is a copy of the Complaint to which Cosmo has not responded.

[11] *See Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 69 (2d Cir. 1971) *rev'd on other grounds*, 409 U.S. 363 (1973). The Court concluded that a "well pleaded complaint" is a term of art and that an allegation in a complaint should be considered not to be "well pleaded" only "in very narrow, exceptional circumstances." "For example, an allegation made indefinite or erroneous by other allegations in the same complaint is not a well-pleaded allegation. Other examples * * * are allegations which are contrary to facts of which the court will take judicial

3

are taken as true, the parties are not held to admit the plaintiff's conclusions of law.[12] Here, it is appropriate to impose judgment as to liability against Cosmo even though there are pending claims against co-defendants.[13] As discussed below, the well-pleaded factual allegations in the Complaint, as corroborated by Cosmo's admissions during his guilty plea in the criminal case, show that Cosmo engaged in cheating, defrauding and deceiving AWI and AMA investors in violation of Section 4b(a) of the Act.[14]

## IV. LEGAL DISCUSSION

### A. The Court has Jurisdiction Over this Action

Whenever it appears that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order promulgated thereunder, Section 6c of the Act[15] authorizes the Commission to seek injunctive relief and grants this Court jurisdiction to entertain this action. Further, venue properly lies with this Court pursuant to Section 6c(e) of the Act[16] in that the Defendants[17] inhabited and transacted business in the Eastern District of New York, and the acts and practices in violation of the Act occurred within this district, among other places.

---

notice, or which are not susceptible of proof by legitimate evidence, or which are contrary to uncontroverted material in the file of the case." *Id.* at 63.

[12]   *Patray v. Northwest Publishing, Inc.*, 931 F. Supp. 865, 869 (S.D. Georgia 1996)

[13]   *See International Controls Corp. v. Vesco,* 535 F.2d 742, 746 n.4 (2d Cir. 1976)(entry of default as to defaulting defendant appropriate where defaulting defendant's liability does not depend on that of any non-defaulting co-defendants); see also Fed. R. Civ. P. 54(b).

[14]   7 U.S.C. §§ 6b(a)(2)(i) and (iii) and 6b(a)(1)(A).

[15]   7 U.S.C. § 13a-1.

[16]   7 U.S.C. § 13a-1.

[17]   The factual assertions and legal arguments in this memorandum are not intended to establish the liability of the non-defaulting defendants in this matter.

4

**B.     Violations of Section 4b(a) of the Act - Cosmo Cheated and Defrauded Investors and Willfully Deceived Investors**

To establish a violation for fraud under Section 4b(a) of the Act, the defendant must have made (1) a false or misleading representation or omission (2) of a material fact (3) with scienter (4) in connection with a futures transaction (5) for or on behalf of any other person.[18]

First, as shown in the Complaint, Cosmo solicited funds from investors for the stated purpose of investing in bridge loans and merchant advances but, instead, engaged in unauthorized commodity futures trading which resulted in tens of millions of dollars in losses.[19] None of these trading activities or trading losses was disclosed to investors.[20] Further, in order to perpetuate this scheme, Cosmo made a false representation to a futures commission merchant ("FCM") that no other persons or entities had a financial interest in the trading account opened by Cosmo in the name of AWI.[21] This representation to the FCM was patently false as Cosmo funded these trading accounts with AWI and AMA investor funds.[22]

Second, these misrepresentations and omissions were material. "A statement is material if there is a substantial likelihood that a reasonable investor would consider it important in

---

[18]     *See CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in relevant part sub nom., CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000).

[19]     *See* Complaint ¶¶ 1, 15-21; Rix Dec. ¶¶ 8-12 and Ex. D: Docket Sheet: ECF Entry No. 3 (Attachment 2: Affidavit in Support of Statutory Restraining Order dated January 27, 2009).

[20]     *See* Complaint ¶¶ 15-16, 18, 21; *see also* Rix Dec. Ex. F: Criminal Plea Proceedings, p. 57.

[21]     *See* Complaint ¶ 20.

[22]     *See* Complaint ¶¶ 17-18; *see also* Rix Dec. Ex. F: Criminal Plea Proceedings, p. 57.

making an investment decision."[23] It is clearly important to an investor's decision that the money will (or will not) be invested in the market at all.[24] Accordingly, Cosmo's nondisclosure to AWI and AMA investors that their funds would be used to trade futures and his nondisclosure of his loss of investor funds through futures trading constitute material misrepresentations and omissions.

Third, these material misrepresentations were made with scienter. Scienter requires proof that the defendant committed the alleged wrongful acts "intentionally or with reckless disregard for his duties under the Act."[25] Most significantly, Cosmo admitted during his plea allocution in the parallel criminal matter that he "was aware of and participated in solicitation of the money from investors and the deposit of investors' funds into [AWI] and AMA knowing that false representations had been made concerning the true use to which these investors' funds would be put,"[26] that his "business plan had no possible way to exist without [defrauding investors],"[27]

---

[23] *CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d at 115 *quoting Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 111 (2d Cir. 1986).

[24] *CFTC v. Skorupskas,* 605 F.Supp. 923, 932 (E.D. Mich. 1985) (defendants defrauded customers by soliciting investor funds for trading and then not trading those funds); *CFTC v. Muller,* 570 F.2d 1296, 1300-01 (5th Cir. 1978) (preliminary injunction affirmed where CFTC made a *prima facie* showing that defendant had misappropriated customer funds in violation of the Act); *In re Commodities Int'l Corp.,* [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶26,943 at 44,563-64 (CFTC Jan. 14, 1997) (finding that misrepresentations and omissions to customers were material and fraudulent because customers could not properly evaluate their circumstances with regard to risk of loss and opportunity for profit).

[25] *Hammond v. Smith Barney, Harris Upham & Co.*, [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,617 at 36,657-59 (CFTC March 1, 1990) (*scienter* is a necessary element to establish futures fraud); *Do v. Lind-Waldock & Co.*, [1994-1996 Transfer Binder] Comm. Fut., L. Rep. (CCH) ¶ 26,516 at 43,321 (CFTC Sept. 27, 1995) (a reckless act is one where there is so little care that it is "difficult to believe the [actor] was not aware of what he was doing").

[26] *See* Rix Dec. Ex. F: Criminal Plea Proceedings at pp. 57-58.

6

and that Cosmo traded futures as a "way of trying to make the interest that I was selling to pay [AWI and AMA investors] back."[28] Here, it is clear from the facts alleged in the Complaint and Cosmo's own plea allocution that he knowingly made material misrepresentations and omissions.[29]

Fourth, Cosmo's material misrepresentations and omissions were made in connection with futures transactions. Cosmo admitted during his plea allocution that he promised investors interest payments on their bridge loans and merchant advances.[30] He further admitted that he knew he lacked the funds to make these payments yet he continued to solicit investors and make these false representations because he was investing their funds in the futures market as a "way of trying to make the interest that I was selling to pay [AWI and AMA investors] back."[31] Cosmo's deceptions and omissions enabled Defendants to continue to engage in futures trading over a five-year period. Indeed, it is beyond cavil that Cosmo was trading futures contracts in order to perpetuate this multi-year scheme to defraud investors. Accordingly, Cosmo's plea allocution makes clear that the futures trading was "in connection with" futures transactions and an inextricable part of his fraudulent scheme.[32]

---

[27]   *See* Rix Dec. Ex. F:  Criminal Plea Proceedings at p.58; *see also* Rix Dec. Ex. G, Criminal Sentencing Proceedings, at p. 57-58

[28]   *See* Rix Dec. Ex. F:  Criminal Plea Proceedings at p. 59.

[29]   *See* Complaint ¶ 21.

[30]   *See* Rix Dec. Ex. F:  Criminal Plea Proceedings, pp. 55-56.

[31]   *See* Rix Dec. Ex. F:  Criminal Plea Proceedings, pp. 58-59.

[32]   Private investors filed actions alleging, among other claims, that various FCMs and banks aided and abetted Defendants' futures fraud. *See In re Agape Litigation*, 681 F.Supp.2d 352 (E.D.N.Y. 2010). In dismissing this claim, the Court ruled that the private investors lacked standing under Section 22(a)(1)(B) of the Act, 7 U.S.C. § 25(a)(1)(B), because they did not deposit funds "in connection with" any futures contracts. Rather, the Court ruled that the private

7

Fifth, Defendants' futures transactions were made, or were to be made, for or on behalf of the investors. As Cosmo admitted during his plea proceeding, he engaged in futures trading using AWI and AMA investors' funds for the purpose of using profits from these futures trades to pay AWI and AMA investors their interest payments.[33] Thus, by Cosmo's admission, the futures transactions were entered into for or on behalf of the investors.

---

investors had deposited funds "in connection with" bridge loans. *Id*. at 368. However, the Court's decision is distinguishable from the instant matter for a number of reasons. First, "'the limitation on standing to bring [a] private suit for damages for fraud in connection with the purchase or sale of securities is unquestionably a distinct concept from the general statutory and regulatory prohibition on fraud in connection with the purchase or sale of securities.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503, 1513 (2006) (*quoting Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 395 F.3d 25, 39 (2d Cir. 2005).

Second, "it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or someone else." *Id.* at 1513 (citation omitted). "The requisite showing, in other words, is 'deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." *Id.* at 1513 (*citing U.S. v. O'Hagan*, 117 S.Ct. 2199 (1997)). "Under [U.S. Supreme Court] precedents, it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else." *Id.* at 1513. In that regard, various other court decisions involving private litigants that pre-date the Supreme Court's decision in *Dabit* provide no relevant analysis of the "in connection with" requirement of Section 4b in the context of regulatory enforcement actions. *See, e.g., Tatum v. Legg Mason Wood Walker, Inc.* 83 F.3d 121 (5th Cir. 1996) (in private litigation where defendant liquidated plaintiffs' securities positions without their knowledge to cover defendant's losses in futures market, court found Section 4b's "in connection with" requirement was not satisfied because plaintiffs not parties to the futures contract); *Kearney v. Prudential-Bache Securities, Inc.*, 701 F.Supp. 416, 424 (S.D.N.Y. 1988) (holding, in private litigation, that "the 'in connection with' requirement mandates that the alleged fraud concern the…characteristics and attributes that would induce an investor to buy or sell the particular commodity futures contract").

Third, while Sections 4b and 22 both contain the language "in connection with," Section 4b requires that fraud or deception be connected to futures transactions and not proof that investors deposited funds in connection with an order to make a futures contract as required in Section 22. *See In re Agape Litigation,* 681 F.Supp.2d at 368 ("in the same vein, it was Cosmo, not the Class Action Plaintiffs, who deposited money in connection with an order to make commodity futures contracts; …"). Accordingly, Cosmo's misrepresentations and omissions were in connection with Cosmo's futures trading.

[33]   *See* Rix Dec. ¶ 8, Ex F:  Criminal Plea Proceedings at pp. 56-57, 59.

Accordingly, Cosmo's cheating, defrauding and deceiving of AWI and AMA investors violated Section 4b(a) of the Act.[34]

## V. THE COURT SHOULD GRANT THE COMMISSION APPROPRIATE RELIEF

### A. Permanent Injunction Against Cosmo

The Commission is entitled to permanent injunctive relief upon a showing that a violation has occurred and that there is a reasonable likelihood of future violations.[35] Unlike private actions, which are rooted in the equity jurisdiction of the federal court, Commission actions for injunctive relief are creatures of statute. The injunctive relief contemplated in Section 6c of the Act[36] is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct.[37] The rationale for this approach is set out in *CFTC v. British American Commodity Options Corp.*, where the Second Circuit stated:

> The Commission, like the SEC in the securities area, is the "statutory guardian" entrusted with the enforcement of the

---

[34]  7 U.S.C. § 6b(a)(2).

[35]  *SEC v. Aaron,* 605 F.2d 612, 623 (2d Cir. 1979) ("critical question in determining whether the public interest requires the imposition of a permanent injunction is 'whether there is a reasonable likelihood that the wrong will be repeated'") (quoting *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d, 1082, 1100 (2d Cir. 1972); *CFTC v. U.S. Metals Depository*, 468 F.Supp. 1149, 1161-62 (S.D.N.Y. 1979).

[36]  7 U.S.C. § 13a-1.

[37]  Therefore, restrictive concepts ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable. *See CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979), *cert. denied*, 442 U.S. 921; *CFTC v. British American Commodity Options Corp.*, 560 F.2d 135, 141-142 (2d Cir. 1977) *cert. denied*, 438 U.S. 905 (1978); *see also Hecht v. Bowles*, 321 U.S. 331 (1944); *CFTC v. Muller*, 570 F.2d at 1300 (upholding imposition of a preliminary judgment); *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir.), *cert. denied,* 469 U.S. 1034 (1984) (availability of injunctive relief by statute eliminates the need for traditional equitable prerequisites in SEC actions).

congressional scheme for safeguarding the public interest in commodity futures markets."[38]

In determining whether a "reasonable likelihood" of future violations exists, courts generally have considered the egregiousness of the defendant's actions, the isolated, recurrent or systematic nature of the violations, the degree of scienter involved, the defendant's recognition of the wrongfulness of the conduct, and the likelihood that the defendant's customary business activities will present opportunities for future violations.[39]

In particular, "the likelihood of future violations of law can be inferred from defendants' past illegal conduct,"[40] and "factors suggesting that the infraction might not have been an isolated occurrence are always relevant." [41] Here, as demonstrated above and in the Complaint, Cosmo engaged in a "systematic pattern of questionable conduct" [42] by fraudulently soliciting and receiving tens of million dollars from AWI and AMA investors for the stated purpose of

---

[38] 560 F.2d at 1142 *quoting SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) ("SEC appears in these proceedings not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the [federal] laws. Hence, by making the showing required by statute that the defendant 'is engaged or about to engage' in illegal acts, the Commission is seeking to protect the public interest, and 'the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief'") (*internal citation omitted*).

[39] *SEC v. Management Dynamics, Inc.,* 515 F.2d at 807 ("Whether the inference that the defendant is likely to repeat the wrong is properly drawn, however, depends on the totality of the circumstances ..."); *see also SEC v. Tome*, 638 F.Supp. 596, 620 n. 45 (S.D.N.Y. 1986) ("preponderance of the evidence standard is the proper burden of proof…in injunctive actions brought by the SEC…").

[40] *CFTC v. Morgan, Harris & Scott, Ltd.,* 484 F.Supp. 669, 677 (S.D.N.Y. 1979)(citation omitted).

[41] *CFTC v. Morgan,* at 677, *quoting SEC v. Management Dynamics, Inc.*, 515 F.2d at 807.

[42] *Id*. at 677; *see also CFTC v. U.S. Metals Depository*, 468 F.Supp. at 1162 (permanent injunction necessary "because of the pervasive illegality of the firm's operations" including "calculated campaign of cold canvassing, the slanted and misleading brochures,…extravagant promises made by salespeople.,…and patent illegality of the vehicle sold" ).

10

investing in bridge loans and merchant advances, but instead, over a period of five years, engaged in unauthorized commodity futures trading, sustaining millions of dollars in trading losses and never disclosing the trading nor the trading losses to AWI and AMA investors.[43] Accordingly, his repeated egregious illegal conduct and well-planned scheme to systematically defraud the investors demonstrate a high level of scienter and a reasonable likelihood of future violations.[44]

Once the Commission makes its showing of illegality and establishes a reasonable likelihood of future violations, Section 6c(c) of the Act[45] empowers the District Court to enforce compliance with the Act by taking "such action as is necessary to remove the danger of violation…"[46] The grant of injunctive relief to enforce a remedial statute such as the Act:

> is a classic example of modern utilization of traditional equity jurisdiction for the enforcement of a congressionally declared public policy administered by a regulatory agency established for that purpose…[C]ourts should be alert to provide appropriate remedies for the effectuation of the declared national policy. Otherwise, that policy may be frustrated by judicial inaction.[47]

In sum, based upon the case law and the egregious allegations on the record in this matter and Cosmo's guilty plea in the parallel criminal action, Plaintiff respectfully requests that this Court issue a permanent injunction against Cosmo as set forth in the attached Proposed Order.[48]

---

[43] *See* Complaint ¶¶ 15-21.

[44] *See U.S. v. Cosmo*, (2d Cir. 2012), Case No. 11-4506, dated Sept. 20, 2012, Doc. No. 70-1, *affirming U.S. v. Nicholas Cosmo*, Docket No. CR-09-255 (DRH).

[45] 7 U.S.C. § 13a-1(c).

[46] *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 566, 583 (9th Cir. 1981).

[47] *SEC v. Advance Growth Capital Corp.*, 470 F.2d 40, 53 (7th Cir. 1972).

[48] *See* Complaint Section VI.

11

**B.     Civil Monetary Penalty[49]**

Section 6c(d)(1) of the Act[50] provides that "the [CFTC] may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation [of the Act] a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation[.]" Based on the relevant time period for the fraud in the instant matter, Regulation 143.8(a)(1)(ii) provides that the inflation-adjusted civil monetary penalty shall be "not more than the greater of $140,000 or triple the monetary gain to such person for each such violation."[51] "In determining how extensive the fine for violations of the Act ought to be, courts and the [CFTC] have focused upon the nature of the violations" and their gravity.[52] In this regard, the Commission has stated:

> Civil monetary penalties serve a number of purposes. These penalties signify the importance of particular provisions of the Act and the [Commission]'s rules, and act to vindicate these provisions in individual cases, particularly where the respondent has committed violations intentionally. Civil monetary penalties are also exemplary; they remind both the recipient of the penalty and other persons subject to the Act that noncompliance carries a cost. To effect this exemplary purpose, that cost must not be too low or potential violators may be encouraged to engage in illegal conduct.[53]

---

[49]     Although the Commission's complaint also seeks restitution and disgorgement (*see* Complaint, Section VI, ¶¶ (c) and (d)), the Commission does not seek such relief herein in light of the criminal restitution order against Cosmo in the amount of $179,195,232.63. *See* Rix Dec. Ex. G: Sentencing Proceedings, p. 74.

[50]     7 U.S.C. § 13a-1(d)(1).

[51]     Regulation 143.8(a)(1)(ii), 17 C.F.R. § 143.8(a)(1)(ii).

[52]     *CFTC v. Noble Wealth Data Information Svcs., Inc.* 90 F.Supp.2d 676, 694 (D.Md. 2000) *aff'd in part, vacated in part by CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002).

[53]     *CFTC v. Emerald Worldwide Holdings, Inc.,* No. CV03-8339, 2005 WL 1130588 at *11 (C.D.CA, April 19, 2005) *quoting In re GNP Commodities, Inc.* [1990–92 Transfer Binder] Com. Fut. L. Rep. (CCH) ¶ 25,360 at 39,222 (CFTC 1992)) (citations omitted).

12

In light of the egregiousness of Cosmo's intentional conduct in soliciting hundreds of millions of dollars from investors, his concealing from investors his use of their funds to trade futures and the resulting large trading losses, and the five years during which he engaged in this fraudulent activity, the Commission requests that this Court impose a statutory maximum CMP of $240,000,000 representing triple monetary gain to Cosmo. The $80 million monetary gain to Cosmo is the approximate net amount of AWI and AMA investor funds used and lost as a result of Cosmo's unauthorized trading of investor funds; cases in and outside the Second Circuit support the measure of a defendant's gain by the amount of funds not returned to, or lost by, defrauded investors.[54] This proposed civil monetary penalty amount reflects the gravity of Cosmo's violations of the Act, Cosmo's intentional conduct, and the amount of investor funds lost in futures trading and thus not returned to investors.[55] As the U.S. Court of Appeals for the Second Circuit recently held in affirming Cosmo's 25-year prison sentence, "[t]he fraud took in

---

[54] *See* Rix Dec. ¶¶ 8-9, 12; *see also, e.g. FTC v. Verity*, 443 F.3d 48, 68 (2d Cir. 2006)(in restitution context "in many cases…the defendant's gain will be equal to the consumer's loss"); *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996) (in disgorgement context, calculation of ill-gotten gains lies within discretion of trial court); CFTC v. Orion, 2006 WL 3422672 at *2 (D.Ore. Nov. 27, 2006) (CMP imposed reflecting defendant's gain as measured by amount of funds not returned to victims of fraud).

[55] *CFTC v. Hays, 2011 U.S. Dist. LEXIS 9243* (D. Minn. Jan. 27, 2011) (imposing penalties of triple the gain finding such penalties necessary to adequately address Defendants' violations and deter against future violations); *CFTC v. Emerald Worldwide Holdings, Inc.*, 2005 U.S. Dist. LEXIS 42893, 31-32 (C.D. Cal. Apr. 19, 2005) (imposing approximately triple the monetary gain, noting that pursuant to 6c, the CMP could have been as high as the $120,000 penalty per violation, multiplied by 30 violations – one for each defrauded investor) (citing *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000)); *R&W Technical Svcs., Ltd. v CFTC*, 2006 WL 1439258 at *4 (5th Cir. 2006) (financial loss suffered by customers one of the factors in determining civil monetary penalty) *citing In re Grossfeld*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) 26,921 at 44,467-8, 1996 WL 709219 at *12 (CFTC Dec. 10, 1996) *aff'd* 137 F.3d 1300 (11th Cir. 1998) (civil monetary penalty calculated based on customer losses).

thousands of middle- and lower-income investors, many of whom lost pensions, college funds and homes; others simply became destitute."[56]

The Commission requests that the Court order that Cosmo's civil monetary penalty obligation not be paid until Cosmo has fully paid the $179,195,232.63 in restitution ordered by the Court in *U.S. v. Nicholas Cosmo*, Docket No. CR-09-255 (DRH), United States District Court for the Eastern District of New York. However, post-judgment interest would accrue on the civil monetary penalty beginning on the date of entry of the Proposed Order and be determined by using the Treasury Bill rate prevailing on the date of entry of the Proposed Order pursuant to 28 U.S.C. § 1961.

Fed. R. Civ. P. 55(b)(2) provides that, if necessary, the Court may conduct a hearing to determine the amount of damages that should be ordered. Here, however, an inquest is unnecessary to determine the damages since the amount of damages ($240,000,000) is based upon triple Cosmo's $80 million monetary gain, which is measured by the amount of funds Cosmo lost in his unauthorized futures trading and did not return to investors. The $80 million in losses were admitted by Cosmo during his criminal plea proceedings.[57]

---

[56] *U.S. v. Cosmo*, Docket No. 11-4506 at 3 (2d Cir. Sept. 20, 2012) (summary order affirming sentence imposed by U.S. District Court).

[57] *See* Complaint, Section VI ¶ (e); Rix Dec. ¶ 9 and Ex. F: Criminal Plea Proceedings, pp. 52-54 (Cosmo admits the accuracy of the prosecutor's statement that Cosmo "actually lost approximately $80 million through the commodities trading activity").

## VI. CONCLUSION

The Commission respectfully requests that the Court enter judgment by default against Cosmo, a permanent injunction and civil monetary penalty sought by the Commission. This relief is both within the power of this Court and appropriate under the circumstances.

Date:   September 26, 2012
        New York, New York

                                        Respectfully submitted,

                                        U.S. COMMODITY FUTURES TRADING
                                        COMMISSION
                                        Stephen J. Obie
                                        Regional Counsel

                                    By: /s/ Elizabeth C. Brennan
                                        Elizabeth C. Brennan
                                        Trial Attorney
                                        Steven Ringer
                                        Chief Trial Attorney
                                        U.S. COMMODITY FUTURES TRADING
                                        COMMISSION
                                        140 Broadway, 19th Floor
                                        New York, New York 10005
                                        (646) 746-9747
                                        (646) 746-9939 (facsimile)
                                        ebrennan@cftc.gov